# Garnishment Under the Child Support Enforcement Act of Compensation Payable by the Department of Veterans Affairs

Disability or other compensation paid to a veteran by the Department of Veterans Affairs is subject to garnishment under the Child Support Enforcement Act when, in order to receive such compensation, the veteran has waived receipt of all of the military retired pay to which he or she would otherwise be entitled.

December 19, 1989

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
DEPARTMENT OF VETERANS AFFAIRS

This responds to your Department's letter of December 14, 1988 to the Attorney General,[1] which has been referred to us pursuant to 28 C.F.R. § 0.25(a) for reply. You have asked for our advice whether disability or other compensation paid to a veteran by the Department of Veterans Affairs ("DVA") is subject to garnishment under the Child Support Enforcement Act, 42 U.S.C. §§ 651-669, when, in order to receive such compensation, the veteran has waived receipt of all of the military retired pay to which he or she would otherwise be entitled. For the reasons that follow, we believe that disability or other compensation paid to a veteran in such circumstances is subject to garnishment.

## I. Background

Many veterans who are entitled to receive DVA compensation are also entitled to military retired pay.[2] In order to receive DVA compensation, however, a veteran who is receiving retired pay must waive receipt of "so much of such person's retired or retirement pay as is equal in amount to such [DVA] pension or compensation." 38 U.S.C. § 3105; *see also id.* § 3104 (prohibiting duplication of benefits). As the Supreme Court recently observed, "waivers of retirement pay are common" among veterans

---

[1] Letter for the Attorney General, from Thomas K. Turnage, Administrator of Veterans Affairs (Dec 14, 1988) ("Turnage Letter").

[2] Of the "nearly 2 2 million veterans rated by the VA as having service-connected disabilities ... nearly 20 percent, some 435,000, are military retirees." Turnage Letter at 1.

who are entitled to receive DVA disability benefits, "[b]ecause disability benefits are exempt from federal, state and local taxation." *Mansell v. Mansell*, 490 U.S. 581, 583 (1989).

The DVA's general anti-garnishment statute provides in pertinent part:

> Payments of benefits due or to become due under any law administered by the Veterans' Administration shall not be assignable except to the extent specifically authorized by law, and such payments made to, or on account of, a beneficiary shall be exempt from taxation, shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary.

38 U.S.C. § 3101(a). Thus, veterans' benefits are generally not subject to garnishment.

In 1975, Congress passed the Child Support Enforcement Act, which creates an exception to the anti-garnishment provisions of 38 U.S.C. § 3101(a) for the purpose of enforcing veterans' family support obligations. Section 659 of the Child Support Enforcement Act provides in part:

> Notwithstanding any other provision of law (including section 407 of this title), effective January 1, 1975, moneys (the entitlement to which is based upon remuneration for employment) due from, or payable by, the United States or the District of Columbia (including any agency, subdivision, or instrumentality thereof) to any individual, including members of the armed services, shall be subject, in like manner and to the same extent as if the United States or the District of Columbia were a private person, to legal process brought for the enforcement, against such individual of his legal obligations to provide child support or make alimony payments.

42 U.S.C. § 659(a).[3]

Section 662(f)(2) of the Act, however, exempts certain governmental payments to veterans from garnishment for child support, including

> any payments by the [DVA] as compensation for a service-connected disability or death, *except any compensation paid by the [DVA] to a former member of the Armed*

---

[3] This provision "was intended to create a limited waiver of sovereign immunity so that state courts could issue valid orders directed against agencies of the United States Government attaching funds in the possession of those agencies." *Rose v Rose*, 481 U S. 619, 635 (1987).

> *Forces who is in receipt of retired or retainer pay if such*
> *former member has waived a portion of his retired pay in*
> *order to receive such compensation ....*

*Id.* § 662(f)(2) (emphasis added). Thus, "any compensation" paid by the DVA in cases where the recipient "is in receipt of retired or retainer pay" and has waived "a portion of his retired pay in order to receive such compensation" is subject to garnishment for the purpose of making child support or alimony payments.

The DVA is of the view that the plain language of section 662(f)(2) precludes garnishment when a veteran has waived *all* of his or her retired pay in order to receive DVA compensation. In 1983, at the DVA's request, the Office of Personnel Management ("OPM") amended its regulation interpreting 42 U.S.C. § 662(f)(2) to adopt the DVA's construction of the statute. *See* 48 Fed. Reg. 26,279 (1983).[4]

Courts have reached conflicting conclusions concerning the validity of the DVA's interpretation of 42 U.S.C. § 662(f)(2). Some courts have held that a literal construction of the statute supports the interpretation that garnishment is not available when a veteran has waived all of his or her retired pay in order to receive DVA compensation. *See, e.g., Sanchez Dieppa v. Rodriguez Pereira,* 580 F. Supp. 735 (D.P.R. 1984). Other courts have held that this construction fosters anomalous results, and is inconsistent with Congress' intent in enacting the statute. *See, e.g., United States v. Murray,* 282 S.E.2d 372 (Ga. Ct. App. 1981).

## II. Discussion

In our view, 42 U.S.C. § 662(f)(2) should be interpreted as permitting garnishment of DVA compensation even when a veteran has waived *all* of his or her retired pay in order to receive such compensation. The statutory language allows this construction without strain. Moreover, Congress' purpose in permitting garnishment of DVA compensation paid in lieu of retired pay is far better served by permitting such garnishment regardless of whether the DVA compensation exceeds the retired pay entitlement.

---

[4] As amended, the interpretive regulation provides·

> Any payments by the Veterans Administration as compensation for a service-connected disability or death, except any compensation paid by the Veterans Administration to a former member of the Armed Forces who is in receipt of retired or retainer pay if such former member has waived a portion of his/her retired pay in order to receive such compensation. In this case, only that part of the Veterans Administration payment which is in lieu of the waived retired/retainer pay is subject to garnishment *Payments of disability compensation by the Veterans Administration to an individual whose entitlement to disability compensation is greater than his/her entitlement to retired pay, and who has waived all of his/her retired pay in favor of disability compensation, are not subject to garnishment or other attachment under this part*

5 C.F.R. § 581.103(c)(4)(iv) (emphasis added).

Section 662(f)(2) subjects DVA compensation to garnishment when "a former member of the Armed Forces who is in receipt of retired or retainer pay ... has waived a *portion* of his retired pay in order to receive such compensation." 42 U.S.C. § 662(f)(2) (emphasis added). In excluding disability compensation from garnishment whenever a veteran "has waived *all* of his/her retired pay in favor of disability compensation," 5 C.F.R. § 581.103(c)(4)(iv) (emphasis added), OPM's interpretive regulation tracks a common definition of the word "portion."[5] However, we do not agree that section 662(f)(2) "is sufficiently clear on its face to obviate the need for statutory construction." Turnage Letter at 5. As used in the statute, a "portion" could reasonably mean "any amount greater than zero."

The term is frequently used in this sense in other statutes. For example, 18 U.S.C. § 648, which prescribes criminal penalties for embezzlement, prohibits any "officer or other person charged by any Act of Congress with the safe-keeping of the public moneys" from "loan[ing], us[ing], or conver[ting] to his own use ... any portion of the public moneys intrusted to him for safe-keeping." Similarly, 18 U.S.C. § 653 prohibits any "disbursing officer of the United States" from, inter alia, "transfer[ring], or apply[ing], any portion of the public money intrusted to him" for "any purpose not prescribed by law." Notwithstanding the use of the word "portion," a defendant could not successfully defend a charge of embezzlement on the grounds that he embezzled all, and not part, of the public money entrusted to him.[6] Accordingly, we do not think that the use of the word "portion" in 42 U.S.C. § 662(f)(2) compels the DVA's interpretation of the statute.[7]

Because the language of the statute is not unambiguous, we turn to the legislative history for guidance. *See, e.g., Blum v. Stenson*, 465 U.S. 886, 896 (1984); *United States v. American Trucking Ass'ns, Inc.*, 310 U.S. 534, 543-44 (1940). Although that history is rather sparse, it is bereft of any indication that Congress intended to exempt veterans from their support obligations if they waive all retired pay in favor of DVA compensation. Rather, Congress' principal purpose was to prevent federal civilian and military employees from evading their support obligations by augmenting the means by which those obligations can be enforced. In

---

[5] *See, e.g., Railroad Yardmasters of America v. Harris*, 721 F 2d 1332, 1346 n.1 (D.C. Cir 1983) (Wald, J , dissenting) ("In usual parlance, portion means 'a: a part of a whole ... b: a limited amount or quantity' Webster's Third New Int'l Dictionary 1768 (1976)." (ellipsis in original)).

[6] *See also* 28 U.S.C. § 994(i)(2) (directing United States Sentencing Commission to prescribe sentencing guidelines providing a substantial term of imprisonment for a defendant who "committed the offense as part of a pattern of criminal conduct from which he derived a substantial portion of his income ").

[7] Furthermore, the language of the statute also fails to support the DVA's argument that a veteran who has waived all of his or her retired or retainer pay is no longer "in receipt of" retired or retainer pay within the meaning of section 662(f)(2) Turnage Letter at 5. The words "in receipt of retired or retainer pay" in the statute merely recite the necessary predicate for a waiver, *i e* , no veteran can waive his or her retired pay unless he or she is "in receipt" of such pay

discussing the original 1975 legislation, the Senate Committee on Finance commented on the garnishment provisions as follows:

> The Committee bill would specifically provide that the wages of Federal employees, including military personnel, would be subject to garnishment in support and alimony cases. In addition, annuities and other payments under Federal programs in which entitlement is based on employment would also be subject to attachment for support and alimony payments.

S. Rep. No. 1356, 93d Cong., 2d Sess. 54 (1974).

Section 662(f)(2) was added to the Act as part of a package of clarifying amendments that were passed in 1977. The explanatory discussion of the clarifying amendments states in part:

> Although the intent of the Congress would appear to be clear from ... [the language in S. Rep. No. 1356, *supra*], questions as to the applicability of the statute to social insurance and retirement statutes have arisen. Other questions as to the kinds of remuneration which are covered by the statute ... have also been raised. To remove the possibility of confusion, the amendment adds a definition of "remuneration for employment" which covers compensation paid or payable for personal services of an individual, whether as wages, salary, commission, bonus, [or] pay .... It excludes any payment as compensation for death under any Federal program, any payment under any program established to provide "black lung" benefits, any payment by the [DVA] as pension, or any payment by the Veterans' Administration as compensation for service-connected disability or death. *Such exclusion, however, does not apply to any compensation paid by the [DVA] to a former member of the armed forces who is in receipt of retired or retainer pay if such former member has waived a portion of his retired pay in order to receive such compensation.*

123 Cong. Rec. 12,913 (1977) (emphasis added).

The purpose of the 1977 amendments was thus to clarify which categories of payments were subject to garnishment and which were not, and DVA compensation received in lieu of retired pay was clearly one type of payment that Congress considered appropriate for garnishment. Although Congress used the word "portion" in describing the effect of section 662(f)(2), there is nothing to indicate that Congress attached a narrow meaning to its use in this context.

Indeed, the narrow interpretation adopted by the DVA does not rationally advance any conceivable legislative purpose that Congress had in permitting garnishment of benefits paid in lieu of retired pay.[8] Congress permitted garnishment in these circumstances because it recognized that a veteran waiving retired pay to obtain DVA compensation is merely substituting one form of income for another, and that the latter income should thus be subject to garnishment to the same extent as the former. In light of this understanding, it should not be relevant *how much* of one's claim to retired pay one waives. There is therefore simply no logical reason that a veteran who has waived 99% of his retired pay in order to receive DVA compensation should be subject to garnishment, while a veteran who has waived 100% of his retired pay should not. This is particularly so in light of the fact that, because DVA compensation is not taxed, the net after-tax income on a dollar-for-dollar basis of veterans whose DVA compensation *exceeds* their waived retired pay is actually greater than that of veterans whose DVA compensation does not exceed their waived retired pay.[9]

In reaching this conclusion, we recognize that, "[i]n analyzing whether Congress has waived the immunity of the United States, we must construe waivers strictly in favor of the sovereign and not enlarge the waiver, "'beyond what the language requires.""" *Library of Congress v. Shaw*, 478 U.S. 310, 318 (1986) (citations omitted). However, this rule does not obviate the need to consider congressional intent when a statutory provision admits of conflicting interpretations, and Congress' intent can be reasonably discerned. *See, e.g.*, *Berman v. Schweiker*, 713 F.2d 1290, 1301 (7th Cir. 1983) ("[W]here Congress by statute has waived sovereign immunity and has demonstrated a clear legislative intent with respect to the broad remedial purpose of the Act, ... each section of the Act must be accorded an interpretation that is consonant with the legislative purpose of the

---

[8] The DVA offers no reason why Congress might have intended to exempt veterans who have waived all of their retired pay in order to receive disability benefits from the requirements of the Child Support Enforcement Act *See* Turnage Letter at 5 ("For whatever reason, Congress intended to prohibit garnishment where retired pay is waived *in toto* . . ")

[9] Our conclusion is not in any way inconsistent with the congressional policy underlying the DVA's anti-garnishment statute, 38 U S C. § 3101(a). In *Rose v Rose*, 481 U S 619, 630-34 (1987), the Supreme Court considered whether section 3101(a) preempted the jurisdiction of a state court to hold a veteran in contempt for failing to pay child support from his veterans' benefits. In concluding that it did not, the Court reasoned:

> Veterans's disability benefits compensate for impaired earning capacity, and are intended to "provide reasonable and adequate compensation for disabled veterans *and their families*." ... Congress clearly intended veterans' disability benefits to be used, in part, for the support of veterans' dependents

*Rose v Rose*, 481 U.S. at 630-31 (citations and footnote omitted).

Since the purpose of DVA compensation is to provide for the security of both veterans and their families, the policy considerations underlying section 3101(a) would not be frustrated by construing section 662(f)(2) to permit the garnishment of DVA compensation that is received in lieu of retired pay, regardless of whether the recipients have waived all of their entitlement to retired pay in order to receive such compensation.

entire Act."). Here, consideration of the legislative history of the Act and the practical effect of the DVA's construction of section 662(f)(2) persuades us that Congress did not intend to relieve veterans of their support obligations whenever their DVA compensation exceeds their retired pay.

### III. Conclusion

For the foregoing reasons, we conclude that 42 U.S.C. § 662(f)(2) should be construed to permit the garnishment of DVA compensation received in lieu of military retired pay even when a veteran has waived all of his or her retired pay in order to receive such compensation. We further recommend that 5 C.F.R. § 581.103(c)(4)(iv) be amended accordingly.

JOHN O. McGINNIS
*Deputy Assistant Attorney General*
*Office of Legal Counsel*